# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
|)
DAVID JACK BAROUCH,|)
|)
    Plaintiff,|)
|)
    v.|)  Civil Action No. 14-0552 (ABJ)
|)
UNITED STATES DEPARTMENT|)
OF JUSTICE, *et al.*,|)
|)
    Defendants.|)
_____|)

## MEMORANDUM OPINION

Plaintiff David Jack Barouch brought this *pro se* lawsuit under the Freedom of Information Act ("FOIA") and the Privacy Act of 1974 against defendants the United States Department of Justice ("DOJ") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), a component of DOJ. Plaintiff and defendants have cross-moved for summary judgment. For the reasons stated below, the Court finds that defendants conducted an adequate search for responsive records under FOIA and that their reliance on FOIA Exemptions 5, 6, 7(C) and 7(E) to withhold responsive material is justified. Defendants have not, however, justified their reliance on FOIA Exemption 3. In addition, the Court finds that defendants' reliance on Exemption (j)(2) of the Privacy Act is justified with respect to all but one of the records at issue in this case. Therefore, the Court will grant in part and deny in part plaintiff's motion for summary judgment, grant in part and deny in part defendants' motion for summary judgment, and remand this matter to defendants for further action consistent with this opinion.

# BACKGROUND

Plaintiff is incarcerated at the Seagoville Federal Correctional Institution in Seagoville, Texas, Compl. [Dkt. # 1] at 1,[1] serving a 120-month sentence for possession of an unregistered destructive device, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. *See Barouch v. DOJ*, 962 F. Supp. 2d 30, 40 (D.D.C. 2013). This is plaintiff's second action against DOJ and ATF seeking disclosure of records related to himself and the crime for which he is incarcerated. *See id.*

## I.   Plaintiff's First FOIA Request and Lawsuit

In April and May of 2011, plaintiff submitted FOIA requests to the Criminal Division of the DOJ, the United States Marshals Service, the Executive Office for United States Attorneys, the Federal Bureau of Prisons, the Department of Treasury, and ATF. *Barouch*, 962 F. Supp. 2d at 39–40. Plaintiff's requests sought "full disclosure and release of all files, records, data and/or information maintained by" each agency under plaintiff's name. *Id.* at 41.

On January 23, 2012, plaintiff filed a *pro se* complaint in this Court under FOIA and the Privacy Act against all of the agencies to which he had sent the FOIA requests, as well as the Department of Justice and the Parker County Sheriff Department.[2] *Id.* at 39–40 & n.1. The complaint alleged that the defendants had failed to respond to plaintiff's FOIA requests, and asked the Court to compel disclosure of the "entire record of investigation" related to plaintiff for the years 2010 and 2011. *Id.* at 46.

The defendants filed two partial motions for summary judgment or dismissal that, if granted, would dispose of the entire case. *Id.* at 46–47. The Court granted the defendants' first

---

1   The complaint does not use a consistent paragraph numbering system, so the Court will cite to page numbers for clarity.

2   The Court dismissed the Parker County Sheriff Department *sua sponte* because it was not subject to FOIA. *Barouch*, 962 F. Supp. 2d at 46.

partial motion for summary judgment, and granted in part and denied in part the defendants' second partial motion for summary judgment.  *Id.* at 70.  With respect to ATF, one of the two defendants in the instant case, the Court found that plaintiff's claim for one set of documents was barred for failure to exhaust administrative remedies, *id.* at 50, and that ATF had properly withheld a second set of documents under the relevant FOIA exemptions.  *Id.* at 62.  The Court also found that it did not have jurisdiction to consider plaintiff's claims under the Privacy Act because plaintiff had not exhausted his administrative remedies under the Act.  *Id.* at 66–68.

## II.   Plaintiff's Second FOIA Request and Lawsuit

On September 3, 2013, plaintiff submitted another FOIA request to ATF seeking "access to all records in agency files, including but not limited to" the following information:

1)   A micro cassette tape recording taken at the Fort Worth Jail Unit in September or October of 2010, in which David Barouch was recorded talking with ATF Agent Riddle and Attorney Franklyn "Mic" Mickelsen on the subject of the Government's promise of 5K1 treatment in this case in exchange for a signed written confession by murderer Eddie Sutton and Barouch provided a map of the burial location and location of the murder weapon.  Mr. Barouch was informed that he would be recorded and he viewed the operation of this tape recording.

2)   A recording taken at the Fort Worth Jail Unit in October or November of 2010 in which Eddie Sutton, ATF Agent Riddle and an unnamed Texas Ranger discussed the Government's prior commitment to provide a 5K1 for Barouch due to Sutton's prior cooperation with Barouch . . . .

3)   A third recording [that] was taken at the Fort Worth Jail Unit [in] October or November or December of 2010 attended by ATF Agent Riddle, unnamed Texas Ranger, and Eddie Sutton about his concern of the Governmetn's [sic] prior commitments to extend 5K1 and Rule 35 reductions of sentence . . . .

4)   All explosive reports including but not limited to ATF Reports of Investigation numbers 3, 4, 5, 6, and 7.

     5)   All reports reviewed and written by Explosive Enforcement Officer
         (EEO) Bennett and recorded by the ATF.

Ex. F to Compl. [Dkt. # 1-1] at F3–F4.  Due to an administrative oversight, however, ATF did not

notify plaintiff that it had received his FOIA request.[3]  Decl. of Stephanie M. Boucher [Dkt. # 8-

3] ("Boucher Decl.") ¶ 9 & n.1.

     Plaintiff initiated this action on April 1, 2014.  *See* Compl.  Plaintiff seeks an order

compelling defendants to release his "entire record of investigation for the years 2010 and 2011,"

including several categories of specifically identified records.  *Id.* at 5–8.  Plaintiff also seeks

litigation costs and fees.  *Id.* at 8.

     On June 24, 2014, ATF released a set of responsive records to plaintiff and informed him

that "several" audio and video recordings would be sent to him under separate cover.  Letter from

Stephanie M. Boucher, Chief, ATF Disclosure Div., to David Jack Barouch, plaintiff (June 24,

2014) [Dkt. # 8-11] ("Boucher Letter") at 1.  On July 16, 2014, plaintiff notified the agency that

he had not received any recordings and noted that, as an inmate, he would not be permitted to

possess recordings in any event.  Letter from David Jack Barouch, plaintiff, to Stephanie M.

Boucher, Chief, ATF Disclosure Div. (July 16, 2014), Ex. 2 to Pl.'s Mot. for Summ. J. [Dkt. # 15-

1].  Plaintiff requested that the agency send him transcripts of the recordings instead.  *Id.*

     Defendants filed a motion for summary judgment on July 1, 2014.  Defs.' Mot. for Summ.

J. [Dkt. # 8] ("Defs.' Mot."); Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 8-1] ("Defs.' Mem.").

Plaintiff filed an opposition to defendants' motion for summary judgment combined with a cross-

---

3    Plaintiff contends that defendants' failure to respond to his FOIA request constituted a
denial of the request, Compl. at 4, which defendants do not dispute.  Therefore, the Court finds
that the issue of exhaustion of administrative remedies has been conceded in this case.  *See* 5
U.S.C. § 552(a)(6)(C)(i) (stating that a FOIA requestor "shall be deemed to have exhausted his
administrative remedies with respect to [a] request if the agency fails to comply with the applicable
time limit provisions" of FOIA).

motion for summary judgment on October 21, 2014.  Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") [Dkt.
# 15]; Pl.'s Verified Mem. Res. to Defs.' Mot. & Defs.' Mem. [Dkt. # 15-1] ("Pl.'s Mem.").
Plaintiff requested that the Court order defendants to produce:

(a)  Respective, unredacted, three (3) tapes, three (3) transcripts, three (3)
corresponding investigative reports, and any related reports.

(b)  97 pages withheld in full, page numbers 681–777 . . . .

(c)  All explosives reports unredacted, including but not limited to ATF
reports of investigation numbers 3, 4, 5, 6, 7, and 11 plus.

(d)  All reports reviewed and written unredacted by Explosive Enforcement
Officer (EEO) Bennett and recorded by [ATF].

(e)  Copy and transcript of Parker County Jail and Fort Worth Jail telephone
tapes, unredacted, in which Plaintiff was a party to the call.

(f)  Unredacted image of DSC07537.

(g)  Unredacted Chain of Evidence documents, and/or documents which
serve a similar purpose.

(h)  Relevant records of subordinate agencies and subagencies acting in
concert with the Bureau of Alcohol, Tobacco, Firearms and Explosives
([ATF]).  Specifically, [ATF] will have copies of the Texas Ranger
records related to Plaintiff and records connecting the Plaintiff with Mr.
Eddie Sutton.  Plaintiff is requesting those prospective records,
recordings, and transcripts in their possession.

(i)  All communications, unredacted, including telephone transcripts, held
by the Department of Justice through its agency, [ATF], concerning
Plaintiff and/or Mr. Eddie Sutton as related to Plaintiff.

(j)  All in-house agency written reports, documents, records, and
handwritten notes naming Plaintiff as a "person of interest" in Plaintiff's
criminal investigation and/or prosecution and/or sentencing collected
and/or retained by the Department of Justice and/or its agency, [ATF].

(k) All responsive records unredacted in the investigative files of the [ATF] and the Criminal Investigation Report System of Records (CIRSR).

Pl.'s Mot. at 2–3.

With respect to the parts of the request related to Mr. Sutton, plaintiff contended that an ATF Agent promised him "a reduction of sentence in exchange for information about the murder Mr. Sutton conducted." Aff. of David Barouch, Ex. 4 to Pl.'s Mot. [Dkt. # 15-1] ("Barouch Aff.") ¶ 3. He also stated that Sutton, a private citizen, "negotiated . . . for Mr. Barouch to receive Rule 35 relief," promising him "time served." *Id.* ¶¶ 6–7. According to plaintiff, he never received any sentencing relief. Pl.'s Mem. at 38.

Plaintiff also stated in his pleading that he had not received some of the records that defendants claimed to have sent him.[4] Pl.'s Mem. at 12. So, on December 22, 2014, "in an abundance of caution," ATF re-sent plaintiff all of the documents it had released to him on June 24, 2014. Defs.' Combined Opp. to Pl.'s Mot. for Summ. J. & Reply [Dkt. # 21] ("Defs.' Reply") at 8–9. That same day, ATF also sent plaintiff the audio and video recordings Boucher had promised in the June 24, 2014 letter, and attributed the delay to technical difficulties in "applying necessary redactions."[5] *Id.* at 5–6.

Defendants filed a combined opposition to plaintiff's motion and reply in support of their own motion on December 23, 2014. Defs.' Reply. Plaintiff responded on January 12, 2015. Pl.'s

---

4      Specifically, plaintiff asserted that "to date the [ATF] has not released to Plaintiff, nor addressed, the [ATF] reports of investigation numbers 3, 4, 5, 6, and 7, reports written by Explosive Enforcement Officer (EEO) Bennett, all explosive reports, any jail telephone tapes and/or transcripts, all in-house agency written records, documents, records, and handwritten notes, nor all relevant records of subordinate agencies and subagencies." Pl.'s Mem. at 12.

5      Defendants identified these recordings as documents 71, 72, and 73 in the *Vaughn* Index. Defs.' Reply at 5–6.

Resp. to Defs.' Reply [Dkt. # 23] ("Pl.'s Reply") at 2–3, 5.   Among the many contentions in his

reply, plaintiff again claimed that he had not received any Reports of Investigation from

defendants, and asked that defendants provide the page numbers of its production on which those

records could be found.[6]  *Id.* at 6.  So, on February 27, 2015, the Court ordered defendants to

identify the relevant page numbers.  Minute Order (Feb. 27, 2015).  Defendants complied with the

Court's order on March 2, 2015.  Defs.' Notice of Compliance (Mar. 2, 2015) [Dkt. # 24].

### STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's action *de novo* and "the burden is

on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v.*

*Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "FOIA cases are typically and appropriately decided

on motions for summary judgment."  *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  On a

motion for summary judgment, the Court "must view the evidence in the light most favorable to

the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility

determinations or weighing the evidence."  *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir.

2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).   But where a

plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary

judgment solely on the basis of information provided by the agency in declarations."  *Moore*, 601

F. Supp. 2d at 12.

While the same legal framework applies in every case, where a plaintiff proceeds *pro se*,

"the Court must take particular care to construe the plaintiff's filings liberally, for such complaints

are held 'to less stringent standards than formal pleadings drafted by lawyers.'"  *Cheeks v. Fort*

---

6       Defendants identified these reports of investigation as documents 2–11 in the *Vaughn*
Index.  *Vaughn* Index [Dkt. # 8-4] at 2–8.

*Myer Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010), quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## ANALYSIS

The Court finds that defendants conducted an adequate search for responsive records under FOIA, and that defendants have justified their withholdings under FOIA Exemptions 5, 6, 7(C), and 7(E). The Court also finds, however, that defendants have not adequately justified their reliance on FOIA Exemption 3 to withhold 97 pages of responsive material in full. Therefore, the Court will remand this aspect of the case to defendants so that they may provide a more detailed justification and release any reasonably segregable portions of the withheld pages.

In addition, the Court finds that defendants' reliance on Exemption (j)(2) of the Privacy Act is justified with respect to all of the relevant records except for the recording referred to in the *Vaughn* Index as document 74. *See Vaughn* Index [Dkt. # 8-4] at 38. The Court will remand this aspect of the case to defendants as well, so that they may provide further explanation and release further information as appropriate. Accordingly, the Court will grant in part and deny in part plaintiff's motion for summary judgment, and grant in part and deny in part defendants' motion for summary judgment.

## I. Defendants conducted an adequate search for responsive records under FOIA and most of defendants' withholdings under FOIA are justified.

FOIA requires the release of government records upon request, and its purpose is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v.*

*Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson,* 456 U.S. at 630.

To prevail in a FOIA action, an agency must, first, demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. "[A]t the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), citing *Oglesby*, 920 F.2d at 68. Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). After asserting and explaining its exemptions, an agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b)(9), unless the nonexempt portions are "'inextricably intertwined with exempt portions.'" *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004), quoting *Mead Data Cent.*, 566 F.2d at 260. "A district court has the obligation to consider the segregability issue *sua sponte*, regardless of whether it has been raised by the parties." *Id.*, citing *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

### A. Defendants' search for responsive records was adequate.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena*

*v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby*, 920 F.2d at 68; *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Defenders of Wildlife v. U.S. Dep't of Interior (Defenders I)*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), citing *Perry v. Block,* 684 F.2d 121, 128 (D.C. Cir. 1982); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (finding that an adequate search need not "uncover[] every document extant"). "[A]n agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine*, 71 F.3d at 890, citing *Oglesby*, 920 F.2d at 68. Agency affidavits attesting to a reasonable search "are afforded a presumption of good faith," *Defenders I*, 314 F. Supp. 2d at 8, and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Id.*, quoting *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).

In support of their motion for summary judgment, defendants submitted a declaration by the Chief of ATF's Disclosure Division, Stephanie M. Boucher, describing the search for responsive records. *See* Boucher Decl. ¶¶ 12–21. According to Boucher, ATF searched the systems of records "where records responsive to Plaintiff's September 2013 FOIA request were likely to be located," namely: N-Force, the agency's official case management system for investigative activities; and the Treasury's Enforcement Communications System ("TECS"), a database maintained by the Department of Homeland Security's Bureau of Customs and Border Protection. *Id.* ¶¶ 12, 14–16. Boucher explains that TECS is a "comprehensive ATF law enforcement database" that ATF uses for searching for documents within the Criminal Investigation Report System of Records. *Id.* ¶ 16. Boucher states that ATF's Disclosure Division

searched the N-Force and TECS databases using plaintiff's first and last name, date of birth, and social security number.  *Id.* ¶ 17.

The searches of the two databases yielded many responsive records, but did not uncover the three audio tapes involving interviews of a non-law enforcement third party that plaintiff had specifically requested in his September 3, 2013 FOIA request.  *Id.* ¶ 19.  So, the Disclosure Division contacted the ATF Special Agent who had handled the criminal investigation of plaintiff to inquire about the tapes.  *Id.*  The ATF Special Agent found a copy of one of the audio recordings, identified as document 74 in the *Vaughn* Index, in his personal files, and provided it to the Disclosure Division by e-mail on June 27, 2014.  *Id.*; *see also Vaughn* Index at 38.  The Special Agent also stated that he recalled only one interview of the third party, that the Texas Rangers led that interview, and that he believed that "any recording of that interview would be in the possession of the Texas Rangers," not ATF.[7]  Boucher Decl. ¶ 19.

In addition, a staff member of the Disclosure Division contacted ATF's Fort Worth Field Office and requested a search for materials related to both plaintiff and the third party who plaintiff believed was a party to the remaining two audio tapes.  *Id*.  By telephone, the Fort Worth Field Office informed the Disclosure Division that it had not located any additional audio recordings related to plaintiff's request.  *Id.*

Plaintiff challenges the adequacy of ATF's search on several grounds.  First, he contends that the search was insufficient because the agency did not locate two of the three audio tapes that he had specifically requested, as well as transcripts and investigative reports related to the tapes.  Pl.'s Mem. at 4, 12.  Plaintiff describes the two missing recordings as "interviews . . . attended by

---

7       Defendants note in the *Vaughn* Index that "FOIA does not require ATF to search for or attempt to obtain copies [of records] from state or local agencies."  *Vaughn* Index at 38.

[ATF] Agent Riddle, an unknown Texas Ranger, and Mr. Eddie Sutton." *Id.* at 5; *see also* Ex. F

to Compl. at F3–F4. He maintains that the agency possesses these recordings because "[l]ogic

would dictate that both interviews were taped." Pl.'s Mem. at 6. In addition, plaintiff points to

what he describes as evidence that the additional recordings and related records exist, including:

- Statements in an affidavit by a former investigator for the Kentucky Department of Public Advocacy that "[w]henever speaking with someone about revealing a felony crime, the conversation is <u>recorded</u> and/or an <u>unbiased</u> witness is brought in to hear it," and that, "[if] a tape is utilized, the tape is <u>transcribed</u> and a report is made" and these records are kept in a government file, Aff. of Ted Schlenker, Ex. 6 to Pl.'s Mot. [Dkt. # 15-1] ("Schlenker Aff.") ¶¶ 3–4;

- A "Management Log" that appears to relate to plaintiff's criminal case, Ex. 3 to Pl.'s Mot. [Dkt. # 15-1];

- Litigation materials submitted by the government in connection with plaintiff's criminal case, Exs. 8–8B to Pl.'s Mot. [Dkt. # 15-1]; and

- Plaintiff's own affidavit, Barouch Aff.

Pl.'s Mem. at 10.

Plaintiff also argues that defendants' statement that "ATF has no other recordings in its

possession that may be responsive to Plaintiff's specific request for the three recordings," Defs.'

Mem. at 6, contradicts Boucher's statement in the June 24, 2014 letter that ATF would be releasing

"several" audio and video recordings to plaintiff, *see* Boucher Letter at 1. Pl.'s Mem. at 6–7. He

further claims that this purported contradiction is evidence that defendants have concealed the

tapes in bad faith, *id.*, observing that "most would deduce that these tapes are being intentionally

secreted by the Defendants." *Id.* at 4–5.

Plaintiff's arguments with respect to the tapes, transcripts, and related records are

unavailing. First, plaintiff's bald assertions that these two interviews occurred, Barouch Aff. ¶¶ 5–

6, that they were taped, Pl.'s Mem. at 6, and that ATF would possess the recordings, *see id.*, are

not persuasive evidence, given that, by plaintiff's own description, he was not present at the

interviews.  Barouch Aff. ¶ 5; *see also* Boucher Decl. ¶ 19 (noting that there may have been only one interview of the third party and that the ATF Agent involved in plaintiff's criminal case believed that the Texas Rangers led that interview and would possess any recording of it).  The Court further notes that it is not clear what weight, if any, should be accorded the affidavit sworn out by the former investigator from Kentucky, *see* Schlenker Aff. ¶ 1, given that the investigation and trial of plaintiff took place in Texas.  *See Barouch*, 962 F. Supp. 2d at 40.  Moreover, the Court notes that this affidavit also indicates that there may be a perfectly reasonable explanation for why defendants did not uncover the tapes plaintiff seeks:  that instead of recording the conversations, the law enforcement agents opted to have "an <u>unbiased</u> witness" present.  *See* Schlenker Aff. ¶ 3.

In addition, neither the litigation materials nor the management log that plaintiff cites suggest that the additional records he seeks have been concealed.  The litigation materials merely state that a law enforcement interview of plaintiff was recorded, *see* Ex. 8A to Pl.'s Mot, and the management log reflects that "[o]ne debrief recording was provided to [an] AUSA."  *See* Ex. 3 to Pl.'s Mot.  Neither of these statements indicates which entities recorded or provided the tapes, and neither statement constitutes evidence that defendants have wrongfully withheld the recordings plaintiff seeks, or that there is more than one recording.

Finally, there is no conflict between the statements in defendants' pleading and the Boucher letter, as plaintiff claims.  *See* Pl.'s Mem. at 6–7.  Defendants' statement that document 74 is the only record in ATF's possession "that may be responsive to Plaintiff's specific request for the three recordings" of interviews, Defs.' Mem. at 6, is supported by the fact that only one of the six recordings listed in the *Vaughn* Index appears to be responsive to this aspect of plaintiff's request.  *Compare Vaughn* Index at 36–38 (describing recordings of a victim's home, telephone calls, a retail store, the crime scene, and an "[i]n Car video"), *with id.* at 38 (describing document 74 as an

"interview of a third party relating to crimes committed by the third party"). These same entries in the *Vaughn* Index also support Boucher's statement that "several" recordings would be sent to plaintiff, *see* Boucher Letter at 1, given that three of the listed recordings were at least partially released. *See Vaughn* Index at 36–37. So there is nothing contradictory or nefarious about the two statements, as plaintiff claims.

In sum, plaintiff has done little more than speculate that ATF possesses the records he seeks, and he has not shown that the agency's search was inadequate or conducted in bad faith. *See Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) ("'[M]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search.'"), quoting *SafeCard Servs.*, 926 F.2d at 1201.

Plaintiff also argues that the search was inadequate because defendants did not produce any records relating to "the murder confession [plaintiff] turned over to [ATF]." Pl.'s Mem. at 17. By withholding and concealing this information, plaintiff contends, defendants have acted in bad faith. Pl.'s Reply at 3. But a FOIA search is not inadequate simply because it fails to turn up all documents that "might conceivably exist." *Goland v. CIA*, 607 F. 2d 339, 369 (D.C. Cir. 1978); *see also Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."). Defendants' failure to find and release these particular records to plaintiff is not, therefore, evidence of agency bad faith.

In addition, plaintiff contends that the search was inadequate because defendants "have not produced nor addressed the following documents: Chain of Evidence; tapes/transcripts of all jail telephone conversations; all relevant records of subordinate agencies and subagencies; all in-house agency written reports, documents, records, and handwritten notes; Investigation Report numbers

3 through 7 and 11-plus; and all explosives reports." Pl.'s Mem. at 23–24. With respect to the "chain of evidence" and "in-house" documents, defendants maintain that "[a]ll records responsive to those searches were identified, annotated and released in accordance with the Vaughn Index." Defs.' Reply at 8. Defendants further explain that ATF "is not responsible for" and does not "maintain prison facilities," and that it "would not record nor possesses and 'jail house phone' recordings." *Id.* In addition, defendants state that ATF "does not have any subordinate agencies or sub-agencies and it does not supervise or control the records of any other law enforcement agency." *Id.* Finally, defendants note that the explosives reports and Reports of Investigation have been identified and released. *Id.* at 7; *see also* Defs.' Notice of Compliance (Mar. 2, 2015).

The Court finds that defendants' explanations with respect to this set of records are entitled to credence. In particular, the Court observes that the *Vaughn* Index indicates that defendants identified, described, and, in some cases, released numerous records that correspond to many of the types of records sought by plaintiff. *See, e.g., Vaughn* Index at 1 (indicating that document 1 is a "Case Management Log"); *id.* at 2–7 (describing documents 2–11 as Reports of Investigation 1–10); *id.* at 20 (indicating that document 43 consists of "[h]andwritten pages from a notebook"); *id.* at 28 (describing document 57 as an "ATF Evidence Log"). In addition, plaintiff has not provided, and the Court has not found, any reason to discount defendants' assertions that ATF does not supervise jails, prisons, or other agencies, nor maintain other agencies' records. Thus, plaintiff's claim that defendants failed to provide him with these records does not undermine the adequacy of defendants' search.

Finally, plaintiff maintains that defendants erred by failing to provide an affidavit from the ATF Special Agent in whose files the recording labeled document 74 was found. Pl.'s Mem. at 6–7; *see also* Boucher Decl. ¶ 19. But the ATF Special Agent's affidavit is not necessary to

establish the adequacy of ATF's search because the Boucher declaration suffices. *See SafeCard Servs.*, 926 F.2d at 1201 (finding that the person who coordinates a FOIA search can be the appropriate declarant). By identifying the databases in which defendants searched for records responsive to plaintiff's request, explaining the rationale for searching those particular databases, and specifying the keywords and search terms used in the search, the Boucher declaration describes "in reasonable detail the scope and method of the agency's search." *See Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009).

Thus, the Court finds that defendants have shown that their search was "reasonably calculated to uncover all relevant documents," *Weisberg*, 705 F.2d at 1351, and that plaintiff has not offered any evidence to rebut the presumption of good faith that attaches to reasonably detailed agency affidavits. *See Defenders I*, 314 F. Supp. 2d at 8.

### B. Defendants' reliance on Exemption 5 is justified.

Defendants invoked Exemption 5 to withhold one paragraph consisting of an "initial analysis . . . provided by one employee for input from another employee in the process of developing a sound agency approach to the proposed asset forfeiture" in plaintiff's case. *Vaughn* Index at 15; *see also* Defs.' Mem. at 18. Plaintiff does not specifically challenge this withholding.[8] But because plaintiff is proceeding *pro se*, the Court holds his pleadings "'to less stringent standards than formal pleadings drafted by lawyers,'" *Cheeks*, 722 F. Supp. 2d at 107, quoting *Haines*, 404 U.S. at 520, and so the Court will examine defendants' Exemption 5 withholding.

---

8      Plaintiff does, however, appear to be under the impression that defendants invoked the attorney-client privilege, and therefore Exemption 5, to withhold the 97 pages of grand jury information that comprise document 69. *See* Pl.'s Mem. at 10, 25; *Vaughn* Index at 35. But defendants' *Vaughn* Index and pleadings do not indicate that Exemption 5 was a basis for that withholding. *See Vaughn* Index at 35; Defs.' Mem. at 16–18.

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5); *see also U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (holding that a record may be withheld under Exemption 5 only if "its source [is] . . . a [g]overnment agency, and it . . . fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it").  Exemption 5 "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the "deliberative process" privilege.  *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981).

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government."  *Klamath*, 532 U.S. at 8–9 (citations omitted), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).  Thus, the privilege only "protects agency documents that are both predecisional and deliberative."  *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *accord McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011).  "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'"  *Judicial Watch*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Defendants assert that the paragraph withheld under Exemption 5 is protected by the deliberative process privilege.  Boucher Decl. ¶¶ 40–43; Defs.' Mem. at 16–18.  Defendants explain that the analysis reflected in this paragraph occurred prior to a final agency determination

17

about an asset forfeiture in plaintiff's criminal case, and that it reflects "the back and forth discussions between [an] ATF Special Agent and Asset Forfeiture staff regarding the possible forfeiture of Mr. Barouch's vehicle."  Boucher Decl. ¶ 43; *see also* Defs.' Mem. at 18.  Defendants have described an exchange that was both predecisional and deliberative, and, given that, as well as the lack of any objection by plaintiff, the Court finds that no portion of the withheld paragraph was reasonably segregable, and that defendants have properly relied on Exemption 5.

### C.  Defendants' reliance on Exemptions 6 and 7(C) is justified.

Defendants withheld portions of numerous records pursuant to Exemptions 6 and 7(C) to protect the identifying information of third parties, including law enforcement agents and a criminal suspect.  *See Vaughn* Index at 1–38.  Exemption 6 shields from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted FOIA invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) protects information that was (1) compiled for law enforcement purposes, if (2) the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C).  Because Exemption 7(C) involves a lower threshold than the one set forth in Exemption 6, which requires a "*clearly* unwarranted invasion" of privacy, *see id.* § 552(b)(6) (emphasis added), the Court will address Exemption 7 first.  *See DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989) (comparing Exemptions 7(C) and 6).

Exemption 7(C) permits agencies to withhold records compiled for law enforcement purposes if release of the information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  To invoke Exemption 7(C), the agency must first make the threshold showing that the records were compiled for law enforcement purposes.  *See Rural Hous. Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73, 80 (D.C. Cir. 1974).

Then, the agency must articulate a privacy interest that would be invaded by disclosure. *See Reporters Comm.*, 489 U.S. at 756.

Once a legitimate privacy interest has been established, a FOIA requestor bears the burden of asserting a countervailing public interest in disclosure. *See, e.g.*, *Boyd v. Criminal Div. of the DOJ*, 475 F.3d 381, 387 (D.C. Cir. 2007); *Lewis*, 609 F. Supp. 2d at 84; *Fischer v. DOJ*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009).   The requestor must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." *Boyd*, 475 F.3d at 387, quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (internal quotation marks omitted).   The Supreme Court has stated that the only relevant public interest for purposes of Exemption 7(C) is "the citizens' right to be informed about what their government is up to." *Reporters Comm.*, 489 U.S. at 773.   "That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.*   Moreover, "[a]s a general rule, third-party identifying information contained in [law enforcement] records is 'categorically exempt' from disclosure," *Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 38 (D.D.C. 2013), including "names, addresses, or other identifiers," *Nation Magazine*, 71 F.3d at 896, unless there is "an overriding public interest in disclosure." *Lewis v. DOJ*, 609 F. Supp. 2d 80, 84 (D.D.C. 2009), citing *Nation Magazine*, 71 F.3d at 896.

As a preliminary matter, defendants state that ATF compiled the information it withheld under Exemption 7(C) in the course of its criminal investigation of plaintiff.   Boucher Decl. ¶ 29. Plaintiff does not contest this assertion.   The criminal investigation of plaintiff plainly qualifies as law enforcement activity, and so the threshold requirement of Exemption 7 is met.

Plaintiff challenges defendants' reliance on Exemption 7(C) to withhold in full the audio tape described as document 74 in the *Vaughn* Index.[9]  Pl.'s Mem. at 35–36, 38.  According to the *Vaughn* Index, this tape contains an "interview of a third party relating to crimes committed by the third party." *Vaughn* Index at 38.  Defendants assert that there is a significant privacy interest at stake with respect to this record because "disclosure of this information could result in embarrassment and harassment due to being mentioned in a criminal investigation case file." *Id.*; *see also* Defs.' Mem. at 15.  Plaintiff argues that there is no legitimate privacy interest in withholding the tape because, he claims, the third party was subsequently "convicted in open court," Pl.'s Mem. at 26, and "[a] murderer would expect his confession to be in the press and a public courtroom." *Id.* at 34.  Plaintiff also suspects that the contents of the recording "possibly deal[] with others' sentencing relief."[10] *Id.*  He contends that there is a public interest in the release of this recording because it "would demonstrate that the [ATF] induced the divulgence of information at great personal risk without honoring their responsibilities," and would "demonstrate that [ATF] displayed prejudice and unfair tactics against Plaintiff."[11] *Id.* at 38.

---

9    In plaintiff's memorandum in support of his cross-motion for summary judgment and opposition, many of the arguments that appear to relate to the impropriety of defendants' withholdings under Exemptions 6 and 7(C) are located under the heading "Exemption (b)(6)," and are absent from the section that is expressly devoted to "Exemption 7(C)." *See* Pl.'s Mem. at 33–39.  But because plaintiff is proceeding *pro se*, the Court will construe his filings liberally, and consider the arguments that he made with respect to Exemption 6 to also have been made with respect to Exemption 7(C).  *See Cheeks*, 722 F. Supp. 2d at 107.

10    Plaintiff is presumably referring to the sentencing relief that he claims was promised to him by an ATF agent and Mr. Sutton, *see* Barouch Aff. ¶¶ 3, 6–7, and which he contends that he never received.  *See* Pl.'s Mem. at 38.

11    Plaintiff further states:  "Public interest and scrutiny would be extremely incited, especially when the public learns that Sutton, who was a professional assassin and Aryan Brotherhood member, was capable of killing Plaintiff.  Public interest and scrutiny will be high:  Plaintiff risked his life, and to this day no one has thanked him."  Pl.'s Mem. at 35.

But third-party identifying information that appears in law enforcement records is generally not subject to disclosure under Exemption 7(C) "unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity," and access to the identifying information "is necessary in order to confirm or refute that evidence." *SafeCard Servs.*, 926 F.2d at 1205–06; *see also Nation Magazine*, 71 F.3d at 896. Plaintiff's speculation about what the contents of the recording might reveal does not constitute "compelling evidence." *See Boyd*, 475 F.3d at 388 ("Unsubstantiated assertions of government wrongdoing . . . do not establish a 'meaningful evidentiary showing.'"), quoting *Favish*, 541 U.S. at 175. Moreover, to the extent plaintiff seeks to claim that the protections of Exemption 7(C) were waived as a result of the third party's judicial proceedings, plaintiff has not made the requisite showing. *See Davis v. DOJ*, 968 F.2d 1276, 1280 (D.C. Cir. 1992) ("[T]o obtain portions of tapes alleged to be in the public domain, [a plaintiff] has the burden of showing that there is a permanent public record of the exact portions he wishes."); *see also Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999). Therefore, plaintiff has not pointed to a public interest that overrides the significant privacy interest of the third party.

Plaintiff's only other challenge to defendants' Exemption 7(C) withholdings is the argument that defendants improperly withheld the names of law enforcement personnel. *See* Pl.'s Mem. at 36. He contends that these names should not be redacted because "law enforcement personnel are in a public position and paid from public coffers." *Id.* Furthermore, he asserts, "[t]here is compelling public interest in knowing whether the defendants conduct investigations free of misconduct by their employees, and how alleged transgressions by employees are addressed." *Id.* Defendants argue that "[t]he release of these names serves no public interest because it will not add to the public's understanding of how ATF works or how well it performs

its duties," and because it could impair the law enforcement employees' ability to do their jobs and subject them to harassment.  Defs.' Mem. at 13.

The fact that law enforcement agents are public officials does not eliminate their personal privacy interests under FOIA.  *See Lesar v. DOJ*, 636 F.2d 472, 487–88 (D.C. Cir. 1980) ("In their capacity as public officials FBI agents may not have as great a claim to privacy as that afforded ordinarily to private citizens, but the agent by virtue of his official status does not forgo altogether any privacy claim in matters related to official business.  As several courts have recognized, these agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives.").  Moreover, plaintiff's asserted public interest in "knowing whether defendants conduct investigations free of misconduct by their employees" is speculative and unsupported by any evidence.  *See Boyd*, 475 F.3d at 387 ("If the public interest is government wrongdoing, then the requester must 'produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'"), quoting *Favish*, 541 U.S. at 174; *see also Judicial Watch, Inc. v. DOJ*, 898 F. Supp. 2d 93, 105 (D.D.C. 2012).  Thus, plaintiff has not identified a public interest that outweighs the privacy interests of the law enforcement personnel whose identifying information was withheld under Exemption 7(C).[12]

### D.  Defendants' reliance on Exemption 7(E) is justified.

Plaintiff does not challenge defendants' withholdings based on FOIA Exemption 7(E), but the Court considers them anyway.  *See Cheeks*, 722 F. Supp. 2d at 107.  Exemption 7(E) protects

---

[12]    Although plaintiff did not specifically challenge defendants' other withholdings under Exemption 7(C), the Court notes that the *Vaughn* Index indicates that all of the withheld material relates to the names and identifying information of third parties.  *See Vaughn* Index at 1–38.  Thus, for the reasons stated above in connection with the particular withholdings plaintiff did challenge, the Court finds that all of defendants' withholdings under Exemption 7(C) were justified.

law enforcement records from disclosure "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This exemption "sets a relatively low bar for the agency to justify withholding: '[r]ather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (alteration in original).

Defendants invoked Exemption 7(E) to withhold "information related to TECS computer file numbers associated with Mr. Barouch and navigation codes." Boucher Decl. ¶ 45. Defendants explain that this information satisfies the threshold requirement of Exemption 7 because "the file numbers are primarily used to store and retrieve law enforcement information." *Id.*; Defs.' Mem. at 15. Defendants further state that the disclosure of this information "could allow individuals outside the agency to circumvent agency functions and gain access to sensitive investigative information," as well as to "alter or create false records." Boucher Decl. ¶ 45; Defs.' Mem. at 16. The Court finds that defendants have shown enough of a risk that "the law will be circumvented"

to justify its reliance on this exemption, *see Blackwell*, 646 F.3d at 42, especially in light of plaintiff's failure to object.[13]

### E. Defendants' reliance on Exemption 3 is not justified.

Exemption 3 allows an agency to withhold information that is "specifically exempted from disclosure by statute." 5 U.S.C. §§ 552(b)(3)(A)(i), (b)(3)(B). ATF invokes Exemption 3 in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure, which prohibits, with exceptions, the disclosure of "matter[s] occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2).

Rule 6(e) qualifies as a "statute" for purposes of Exemption 3 because it was affirmatively enacted by Congress. *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.,* 656 F.2d 856, 867 (D.C. Cir. 1981). But Rule 6(e) should not be read so literally as to draw "a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury." *Senate of P.R. ex rel Judiciary Comm. v. DOJ*, 823 F.2d 574, 582 (D.C. Cir. 1987), quoting *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc). "There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers." *Id*. Rather, "the touchstone is whether disclosure would tend to reveal some secret aspect of the grand

---

13    The Court notes that defendants' *Vaughn* Index indicates that defendants also withheld portions of document 9, described as "ROI 3: Interview of David Barouch on 5/2/2010," citing Exemption 7(E). *See Vaughn* Index at 7. Defendants explain in the *Vaughn* Index that the withheld information relates to "questioning techniques used by the ATF agents and local law enforcement agents," and that the disclosure of "how law enforcement agents and officers question suspects and the tactics they use could lead to criminals using maneuvers to circumvent the law enforcement measures." *Id.* They further state that this information could "permit[] individuals to prepare responses to counter these law enforcement strategies" and that disclosure "would hinder future use of these tactics." *Id.* Although plaintiff has not specifically challenged this withholding, defendants have the burden to justify their reliance on any FOIA exemption, *see* 5 U.S.C. § 552(a)(4)(B), and neither defendants' pleadings nor the Boucher declaration addresses this withholding. Still, the Court finds that the explanation in the *Vaughn* Index provides a sufficient basis upon which to conclude that defendants have carried their burden to justify this particular withholding, especially in light of plaintiff's failure to object to it.

jury's investigation," such as "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Id.* (citations and internal quotation marks omitted).

Defendants withheld in full 97 pages of responsive records that are described in the *Vaughn* Index as "[g]rand jury subpoenas, records." *Vaughn* Index at 35; *see also* Boucher Decl. ¶ 25. Defendants have not, however, described these records with any specificity. Rather, they justify this withholding by reciting the legal standard in a conclusory fashion, asserting that:

> Disclosure of this information would reveal the identities of witnesses or jurors, the substance of the testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like. The grand jury subpoenas and the information obtained through the use of the subpoenas falls squarely within the parameters of the Rule 6(e) prohibitions against disclosure.

*Vaughn* Index at 35; *see also* Defs.' Mem. at 8 ("[B]ecause disclosure of these grand jury materials responsive to Plaintiff's FOIA request would reveal secret aspects of the grand jury's investigation, including its scope and strategy, ATF properly withheld responsive grand jury materials pursuant to Exemption 3.")

Because defendants have failed to provide virtually any description of the grand jury materials they withheld, the Court cannot determine whether the withholding was justified under Exemption 3. *See Citizens for Responsibility & Ethics in Wash. v. DOJ*, 955 F. Supp. 2d 4, 23–24 (D.D.C. 2013) (finding the agency's reliance on Exemption 3 and Rule 6(e) unjustified when the agency had failed to provide enough detail about the information it withheld). Moreover, defendants have failed to demonstrate that no portion of the 97 pages was "reasonably segregable," and therefore subject to release. *See* 5 U.S.C. § 552(b); *see also Senate of P.R.*, 823 F.2d at 582 ("The disclosure of information 'coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury' is not

prohibited."), quoting *Fund for Constitutional Gov't*, 656 F.2d at 870.  Therefore, the Court will remand this aspect of the case to defendants so that they may provide a more detailed justification for their withholdings and release any reasonably segregable portions of the records.

**II.    Defendants' reliance on Exemption (j)(2) of the Privacy Act is justified with respect all but one of the relevant records.**

Plaintiff does not specifically challenge defendants' withholding of records under Exemption (j)(2) of the Privacy Act, but because he is proceeding *pro se*, the Court will nevertheless consider this aspect of defendants' withholdings.  *See Cheeks*, 722 F. Supp. 2d at 107. The Privacy Act provides that "[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him."  5 U.S.C. § 552a(d)(1).  Exemption (j)(2) applies, in relevant part, to records that are:  (1) stored in a system of records that has been designated by an agency to be exempt from the Privacy Act's disclosure requirements; and (2) stored in a system that is "maintained by an agency or component thereof which performs as

its principal function any activity pertaining to the enforcement of criminal laws," and that consists of "information compiled for the purpose of a criminal investigation."[14]  *Id.* § 552a(j)(2)(A).

When a plaintiff challenges an agency's withholding of documents under the Privacy Act, the court determines *de novo* whether the withholding was proper, and the burden is on the agency to sustain its action.  5 U.S.C. § 552a(g)(3)(A); *Doe v. United States,* 821 F.2d 694, 697–98 (D.C. Cir. 1987) (en banc).  And when a request for documents is made under both FOIA and the Privacy Act, the responding agency "must demonstrate that the documents fall within some exemption under *each* Act."  *Martin v. Office of Special Counsel, Merit Sys. Protection Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  "If a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA."  *Id.*

---

14      In full, Privacy Act Exemption (j)(2) provides:

> (j) General exemptions. – The head of any agency may promulgate rules . . . to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is – . . .
>
> (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j), (j)(2).

Here, defendants assert that the records responsive to plaintiff's request fall under Exemption (j)(2) of the Privacy Act.  Boucher Decl. ¶ 24; Defs.' Mem. at 6–7.  They explain that the records were located in the Criminal Investigation Report System of Records, a database that contains records related to ATF's criminal investigations, and that this system is exempt from the access provisions of the Privacy Act.  Boucher Decl. ¶ 22, citing 68 Fed. Reg. 3553; *see also* Defs.' Mem. at 7.  In addition, it is plain that ATF is an agency "which performs as its principal function any activity pertaining to the enforcement of criminal laws," and that the records at issue here constitute "information compiled for the purpose of a criminal investigation."  *See* 5 U.S.C. § 55a(j)(2)(A); *see also* Boucher Decl. ¶ 24 (enumerating federal criminal statutes ATF enforces).  Defendants have thus established that Privacy Act Exemption (j)(2) applies to the records at issue in this case that were located in the Criminal Investigation Report System of Records.

Defendants have failed, however, to account for the fact that one of the responsive records, document 74, was located in the personal file of an ATF Special Agent, which was "not an official agency file."  *See* Boucher Decl. ¶ 19 & n.3.  Defendants have not explained whether records found in this agent's personal file are also subject to withholding under the Privacy Act.  Therefore, the Court will remand this aspect of the case to defendants for clarification and further processing.

## CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part plaintiff's motion for summary judgment, and it will grant in part and deny in part defendants' motion for summary judgment.  The Court will remand the case to defendants for further action consistent with this opinion.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 31, 2015